UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
NILSON MOLINA LARA,

                  Petitioner,

        - against -

KENNETH GENALO in his official capacity as
Field Office Director of New York,
Immigration and Customs Enforcement, *et al.*,

                  Respondents.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
2:26-CV-1424 (PKC)

PAMELA K. CHEN, United States District Judge:

On March 11, 2026, Petitioner Nilson Molina Lara filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet. Writ. Habeas Corpus ("Pet."), Dkt. 1.) He argues that his detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Due Process Clause of the Fifth Amendment, the Trafficking Victims Protection Reauthorization Act ("TVPRA"), the Administrative Procedure Act ("APA"), the Fourth Amendment, and 8 U.S.C. § 1357. (*Id.* at 8–12.) For the following reasons, the Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately.

**BACKGROUND**

Petitioner is an 18-year-old citizen of El Salvador. (Resp'ts' Response to Order to Show Cause ("Resp."), Dkt. 6, at ¶ 8; Resp. Ex. G ("DHS Record"), Dkt. 6, at ECF[1] 26.) He entered the United States by crossing the border without inspection in or around November 2022. (Pet., Dkt. 1, ¶ 8.) He is currently in the process of obtaining Special Immigrant Juvenile Status. (*Id.* at 1.)

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

On March 11, 2026, Petitioner was detained by immigration agents as he walked to school around 8:15 a.m. in Brentwood, New York. (*Id.* ¶¶ 9, 13.) According to Petitioner, his detention lacked probable cause and was effectuated on an illegal basis. (*Id.* ¶¶ 38–41.) Respondents contend that Petitioner was arrested pursuant to a Department of Homeland Security ("DHS") warrant signed on March 10, 2026. (Resp., Dkt. 6, at 1; *see also* Resp. Ex. B ("DHS Warrant"), Dkt. 6, at ECF 10.) Petitioner has not been convicted of any crime in the United States. (*See generally* Pet., Dkt. 1.) According to Respondents and the DHS Warrant, "Petitioner was, by his own admission, involved in an attempted arson" involving a Molotov cocktail.[2] (*Id.* at 2–3; *see also* DHS Warrant, at ECF 10–11; DHS Record, Dkt. 6, at ECF 24–26.) However, as Petitioner notes, Respondents do not "claim that [Petitioner] has been charged for [the arson] offense nor for any other criminal offense during his years of residence in the U.S.," (Reply, Dkt. 7, at 2); rather, according to Respondents, Petitioner admitted his involvement to the immigration agents who arrested him, (*see* DHS Record, Dkt. 6, at ECF 25).[3]

---

[2] Both the Response and Petitioner's Reply direct the Court to online sources regarding arrests in relation to the alleged Molotov cocktail incident. (*See* DHS Record, Dkt. 6, at ECF 35 (referring to a news article); Pet. Reply ("Reply"), Dkt. 7, at 2 (providing link to statement from Suffolk County District Attorney's Office regarding arrests of other individuals).) The Court, however, does not consider nor rely on the substance of these online news reports. *See Ji v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-4815 (SJB), 2026 WL 171879, at *4 (E.D.N.Y. Jan. 22, 2026) ("While the Court may take judicial notice of public records and information published on government websites, the Court may not rely on the document for the truth of the matters asserted therein." (citation and internal quotation marks omitted)).

[3] The summary included in the attached DHS Record states that Petitioner "waived his Miranda rights (verbally and in writing)," (Resp., Dkt. 6, at ECF 24–25), which Petitioner contends "raises serious concerns," (Reply, Dkt. 7, at 2). Petitioner also argues that Respondents' "characteriz[ation of the] interrogation as part of 'post arrest processing'" "suggests a pretextual immigration detention for the purpose of interrogation—essentially, a fishing expedition." (*See id.* at 2.) The Court need not, and does not, weigh in on this issue. The Court only notes that Petitioner's alleged confession is central to Respondents' argument that Petitioner should be detained pending his immigration proceedings because he poses a threat of harm to the community. (*See* Resp., Dkt. 6, at 2.)

Petitioner has been in immigration detention at the Metropolitan Detention Center since his arrest by ICE on March 11, 2026. (*See* Notice to EOIR, Dkt. 6, at ECF 14.) Despite requesting a bond hearing in front of an immigration judge, (*see* Resp. Ex. E (Request for Disposition for Salvadorians), Dkt. 6, at ECF 17), there is nothing in the record to suggest that he has received one, nor any other individualized custody determination. Respondents contend that "Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A)" ("Section 1225(b)(2)(A)"). (*Id.* at 2.)

**DISCUSSION**

Respondents "acknowledge" the Court's previous cases, such as *Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389 (E.D.N.Y. Feb. 4, 2026), and *R.A.R.R. v. Almodovar*, No. 25-CV-6597 (PKC), 2026 WL 323040 (E.D.N.Y. Feb. 6, 2026), "in which petitioners residing in the United States for several years were found to be improperly detained pursuant to [Section] 1225(b)(2)(A)," though they "respectfully disagree with [these] decisions." (*See* Resp., Dkt. 6, at 2.)[4]

The Court adheres to its prior reasoning and holds that Petitioner, who was already in the country when ICE arrested him, cannot be detained pursuant to Section 1225(b)(2)(A). Section 1225(b)(2)(A) requires mandatory detention of noncitizens "seeking admission" while their removal proceedings are pending (absent certain exceptions inapplicable here[5]). 8 U.S.C.

---

[4] The Court has also adhered to the same or similar reasoning in several other cases. *See Molina v. Maldonado et al.*, No. 26-CV-1405 (PKC), 2026 WL 743291 (E.D.N.Y. Mar. 17, 2026); *J.R.R. v. Genalo et al.*, No. 26-CV-1245 (PKC), 2026 WL 691803 (E.D.N.Y. Mar. 11, 2026); *Figueroa Ocampo v. Noem et al.*, No. 26-CV-0999 (PKC), 2026 WL 587643 (E.D.N.Y. Mar. 3, 2026); *Colindres v. Tellez et al.*, No. 26-CV-0663 (PKC), 2026 WL 509493 (E.D.N.Y. Feb. 23, 2026); *Ambroladze v. Maldonado et al.*, No. 26-CV-0473 (PKC), 2026 WL 295405 (E.D.N.Y. Feb. 4, 2026); Order Dismissing Case, *Cordova Vera v. Tellez et al.*, No. 26-CV-0018 (PKC) (E.D.N.Y. Jan. 27, 2026); *Galeas Miranda v. Maldonado et al.*, No. 25-CV-6882 (PKC), 2026 WL 25405 (E.D.N.Y. Jan. 5, 2026).

[5] Specifically, mandatory detention does not apply if the noncitizen is "clearly and beyond a doubt entitled to be admitted," *see* 8 U.S.C. § 1225(b)(2)(A), or if the Secretary of Homeland

§ 1225(b)(2)(A); *accord Jennings*, 583 U.S. at 289 (explaining that "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)," and, in contrast, authorizes the Government to detain "certain aliens *already in the country* pending the outcome of their removal proceedings under §§ 1226(a) and (c)" (emphasis added)). The overwhelming majority of courts in this District and across the country have found that noncitizens like Petitioner—who were detained by ICE after living in the United States for years—are not "seeking admission" and therefore cannot be detained pursuant to Section 1225(b)(2)(A). *See, e.g.*, *Barco Mercado v. Francis*, --- F.Supp.3d ----, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case— the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."); *id.* at *13– 14 (collecting cases).[6]

---

Security discretionarily and temporarily paroles them from custody for "urgent humanitarian reasons or significant public benefit," *id.* § 1182(d)(5)(A). *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (explaining that the "express exception to detention" under 8 U.S.C. § 1182(d)(5)(A) "implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released" under the statutory scheme).

[6] Respondents point to contrary case law, such as *Saamishvili v. Flanagan*, No. 25-CV-6178 (BMC), 2026 WL 377574 (E.D.N.Y. Feb. 11, 2026), *appeal filed Feb. 12, 2026*, and *Quezada v, Francis*, No. 26-CV-0387 (JPC), 2026 WL 380711 (S.D.N.Y. Feb. 11, 2026), as well as *Buenrostro-Mendez v. Bondi*, -- F.4th ---, 2026 WL 323330, at *4–9 (5th Cir. Feb. 6, 2026). These are distinct outliers among the over 300 cases contending with this issue. (*See* Resp., Dkt. 6, at 2 n.4.)

Rather, Petitioner's detention is governed by 8 U.S.C. § 1226(a) ("Section 1226(a)"), which provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Detention under Section 1226(a) is discretionary; immigration authorities "may release" the non-citizen on bond. *Id.* § 1226(a)(2). "[T]he discretionary authority in [Section] 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)); *accord Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) ("[I]t is clear that [Section] 1226(a) requires some exercise of discretion when determining whether or not to detain a noncitizen in the first instance.").[7]

Here, Respondents effectively admit that they *did not exercise discretion* to detain Petitioner; rather, they detained him under the incorrect assertion that his detention was mandatory pursuant to Section 1225(b)(2)(A). (*See* Resp., Dkt. 6, at 2 (stating that Petitioner is "subject to mandatory detention pursuant to Section 1225(b)(2)(A)").) "Such an assertion is precisely the *opposite* of an exercise of discretion." *Lopez Benitez*, 795 F. Supp. 3d at 495. Respondents detained Petitioner pursuant to the wrong statute, without any individualized custody

---

[7] Petitioner also cannot be detained under 8 U.S.C. § 1231 ("Section 1231"), which governs detention during the "removal period" after a noncitizen has been ordered removed, because Petitioner's removal order is not yet administratively final. *See Colindres*, 2026 WL 509493, at *2 (finding that the petitioner could not be mandatorily detained under Section 1231 while his appeal was pending before the BIA); (DHS Warrant, Dkt. 6, at ECF 10 (finding that there is "probable cause to believe that [Petitioner] is removable" based on "the pendency of *ongoing* removal proceedings against [Petitioner]" (emphasis added)).) The Court further notes that, despite Respondents' assertion that Petitioner was involved in arson, because he has not been convicted of any crime, he cannot be detained pursuant to 8 U.S.C. § 1226(c), which directs the Attorney General to take into custody any alien who, *inter alia*, has been convicted of a specified offense or "sentenced" on a felony offense. 8 U.S.C. § 1226(c)(1). In any event, Respondents do not argue that Petitioner was detained pursuant to Section 1226(c).

determination, prior notice, or opportunity to be heard. Accordingly, for the reasons set forth in the Court's prior decisions, and hundreds of other decisions across the country, Respondents' actions violated Petitioner's procedural due process rights. *See, e.g.*, *R.A.R.R.*, 2026 WL 323040, at *4–5 (applying balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluding that the petitioner's detention under Section 1226(a) violated his procedural due process rights where Respondents erroneously treated the petitioner as subject to mandatory detention under Section 1225(b)); *see also Barco Mercado*, 2025 WL 3295903, at *12 (holding that the petitioner's detention "pursuant to the wrong statute violated due process"); *M.K. v. Arteta*, No. 25-CV-9918 (LAK), 2025 WL 3720779, at *8–9 (S.D.N.Y. Dec. 23, 2025) ("Having determined that [Section 1225(b)(1)] is inapplicable to [an individual living in the United States for over two years], the Court concludes that [the petitioner's] detention pursuant to the wrong statute is unlawful."); *Yao v. Almodovar*, No. 25-CV-9982 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (concluding that "ICE's discretion-free detention of [the petitioner] abridged his rights under [Section] 1226 and violated due process," and compiling cases reaching the same conclusion).[8]

While Respondents assert, without citing any authority, that a bond hearing is a more appropriate remedy than immediate release "given the facts of this case that suggest [P]etitioner is a threat to the community," (Resp., Dkt. 6, at 3), the Court disagrees. This is not a situation in which the petitioner has prior convictions or an extensive criminal record. *See Gimenez-Dominguez v. Francis*, No. 26-CV-1438 (JPO), 2026 WL 538682, at *2 (S.D.N.Y. Feb. 26, 2026) (distinguishing cases where petitioners had prior convictions or extensive criminal records with

---

[8] Having concluded that Petitioner's detention violates his procedural due process rights, the Court does not reach Petitioner's arguments regarding substantive due process, the TVPRA, the APA, the Fourth Amendment, or 8 U.S.C. § 1357.

the instant case where the petitioner had "only a single arrest, where the charges were later dismissed"). Petitioner's "criminal history" is minimal and lacks formal charges.[9] (*See* Resp., Dkt. 6, at ECF 25.)

The Court therefore sees no reason to depart from its prior conclusion that the appropriate remedy for Respondents' violation of procedural due process is Petitioner's immediate release, not an order directing Respondents to provide him with a bond hearing. *See, e.g.*, *Colindres*, 2026 WL 509493, at *3; *see also Yao*, 2025 WL 3653433, at *11 ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [the petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so."); *id.* at *12 (compiling cases holding the same); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in the case in light of the constitutional violations suffered).

**CONCLUSION**

The Petition for Writ of Habeas Corpus, (Pet., Dkt. 1), is GRANTED. Respondents are ordered to release Petitioner from custody immediately and no later than within 24 hours of this Order. Respondents are ordered to release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty. Respondents are

---

[9] The Court recognizes that based on the conduct alleged in the Response, there might be evidence that Petitioner presents a risk of danger to the community that warrants his detention during his removal proceedings. However, that is a determination that must be made, if ever, by Respondents using the proper procedure, which is an individualized custody determination pursuant to Section 1226(a) and/or the TVPRA. *See R.A.R.R.*, 2026 WL 323040, at *5 (finding detention without an individualized custody determination "unlawful under both Section 1226[(a)] and [the TVPRA]"). The Court also notes that Respondents' focus on Petitioner's dangerousness is at odds with their contention that his detention was pursuant to Section 1225(b)(2)(A), which is mandatory and does not depend on the risk of danger or flight that a noncitizen presents.

further directed to return to Petitioner any and all funds or property seized from Petitioner at the time of his arrest. Respondents are directed to certify compliance with the Court's Order by filing a letter on the docket no later than 6:00 p.m. tomorrow, March 19, 2026.

The Court further orders that Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court. Petitioner must not be re-detained by Respondents without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which Respondents will have the burden of showing that Petitioner's re-detention is authorized under a statutory authority other than Section 1225(b)(2)(A).

Petitioner's deadline to apply for fees under the Equal Access to Justice Act is within thirty (30) days of a final judgment in this action, which, if Respondents do not appeal, will be April 17, 2026. *See* 28 U.S.C. § 2412(d)(1)(B). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 18, 2026
      Brooklyn, New York